No. 24-6301

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

STRONG COMMUNITIES FOUNDATION OF ARIZONA, INC, ET. AL.,

*Plaintiffs-Appellants*,

v.

STEPHEN RICHER, IN HIS OFFICIAL CAPACITY AS MARICOPA COUNTY
RECORDER, ET AL.,

*Defendants-Appellees*.

———————————

On Appeal from the United States District Court for the
District of Arizona
No. CV-24-02030-PHX-KML
Hon. Krissa M. Lanham

———————————

## BRIEF OF MARICOPA COUNTY APPELLEES
———————————

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

Thomas P. Liddy
Joseph E. La Rue
Jack L. O'Connor III
Rosa Aguilar
Deputy County Attorneys
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Maricopa County Appellees*

**Table of Contents**

Table of Contents ............................................................................. i

Table of Authorities ....................................................................... ii

Introduction .................................................................................... 1

Statement of the Issues.................................................................... 3

Statement of the Case...................................................................... 3

    I.     Arizona's Voter Registration System................................... 3

    II.    Federal List Maintenance Requirements............................... 4

    III.   Plaintiffs Initiated This Action............................................ 5

    IV.   The District Court Denied Plaintiffs' Request for Injunctive Relief .... 6

Standard of Review .......................................................................... 9

Argument.......................................................................................... 9

    I.     The Court Lacks Subject Matter Jurisdiction. ...................... 9

         A.    This Appeal is Moot..................................................10

         B.    Strong Communities and Cahill Lack Standing Because They Fail to Establish An Injury..................................12

         C.    Strong Communities Lacks Representational Standing. ..........14

         D.    Strong Communities Lacks Organizational Standing...............14

         E.    Strong Communities and Cahill Lack Redressability...............17

Conclusion ...................................................................................... 20

## Table of Authorities

**Cases**

*Arizona Alliance for Retired Americans  v. Mayes* ("*AARA*"),
117 F.4th 1165 (9th Cir. 2024) ................................................. 7, 15, 18

*Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"),
570 U.S. 1 (2013) ................................................................................. 3

*Brown v. Rawson-Neal Psychiatric Hosp.*,
840 F.3d 1146 (9th Cir. 2016) ..................................................... 14, 18

*Brown v. Yost*, No. 24-3354,
2024 WL 4847401 (6th Cir. Nov. 21, 2024) ..................................... 11

*Coastal Env't Rts. Found. v. Naples Rest. Grp.,*
*LLC*, 115 F.4th 1217 (9th Cir. 2024) ............................................... 10

*Delgadillo v. Woodford*,
527 F.3d 919 (9th Cir. 2008) ............................................................ 18

*Diamond v. Charles*,
476 U.S. 54 (1986) ............................................................................ 12

*Election Integrity Project California, Inc. v. Weber*,
113 F.4th 1072 (9th Cir. 2024) ......................................................... 18

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997) .......................................................... 14

*Fleck & Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*,
471 F.3d 1100 (9th Cir. 2006). ......................................................... 14

*Food & Drug Admin. v. All. for Hippocratic Med.* ("*Hippocratic Medicine*"),
602 U.S. 367 (2024) ........................................... 7, 13, 14, 15, 16, 17

*Harris v. Bd. of Supervisors, Los Angeles Cnty.*,
366 F.3d 754 (9th Cir. 2004) ............................................................ 18

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .......................................................................... 16

*Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992).............................................................. 9, 12, 18, 19

*Mi Familia Vota v. Fontes*,

719 F.Supp.3d 929 (D. Ariz. 2024) ...................................... 13, 14

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*,

9 F.4th 1201 (9th Cir. 2021) ..................................................10

*Sierra Club v. Morton*,

405 U.S. 727 (1972)...............................................................12

*Smith v. Helzer*,

95 F.4th 1207 (9th Cir. 2024) ...............................................9, 10

**Statutes**

28 U.S.C. § 1292 ..........................................................................3

28 U.S.C. § 1331 ..........................................................................2

28 U.S.C. § 1367 ..........................................................................2

28 U.S.C. § 1391 ..........................................................................2

52 U.S.C. § 20505 ........................................................................3

52 U.S.C. § 20507 ......................................................................5, 19

52 U.S.C. § 20508 ......................................................................3, 4

52 U.S.C. § 21083 ........................................................................4

A.R.S. § 16-121.01......................................................................4, 12

A.R.S. § 16-166...........................................................................3

**Rules**

9th Cir. R. 30-1 ...........................................................................5

Fed. R. App. P. 4(a) ....................................................................3

**Constitutional Provisions**

U.S. Const. art. III, § 2 ...............................................................9

## Introduction

Plaintiffs-Appellants Strong Communities Foundation of Arizona ("Strong Communities") and Yvonne Cahill initiated this action against Defendants-Appellees Maricopa County Recorder Stephen Richer and Maricopa County (collectively the "Maricopa County Defendants"), alleging that the Recorder is not properly performing voter list maintenance regarding noncitizens who (they speculate) are unlawfully registered to vote.[1]

Plaintiffs filed a motion for a temporary restraining order and preliminary injunction seeking relief before the November 2024 election. The Maricopa County Defendants filed a response in opposition to the motion, arguing that Strong Communities and Cahill lacked Article III standing because they failed to allege an injury that is redressable and their request for injunctive relief was barred by laches, the National Voter Registration Act's ("NVRA"), and the *Purcell* principle, among other arguments raised.

The district court agreed that Plaintiffs lacked standing and denied their request for injunctive relief. The court reasoned that Plaintiffs had not shown an injury in fact, and even if they had, "the mismatch between their shifting requests for emergency relief and stated goals would prevent a federal court from redressing

---

[1] Plaintiffs later filed a First Amended Complaint which added all the other Arizona counties and their recorders (collectively the "Defendants").

1

their injury." Alternatively, the court noted that Plaintiffs were not entitled to emergency relief and declined "to order Arizona's county recorders to divert resources from preparing for the general election to instead submitting thousands of requests to DHS" particularly when Plaintiffs' original request—that ineligible voters be removed from the voter rolls—was precluded under the NVRA.

Now, Plaintiffs' appeal is moot. The election has passed, and it is impossible for this Court to grant any effectual injunctive relief with respect to the 2024 general election. But even if this appeal is not moot (and it is), Plaintiffs lack standing. Moreover, because Plaintiffs fail to challenge the district court's determination that Plaintiffs lack redressability, and redressability is required to establish standing, Plaintiffs' appeal cannot succeed. The Court should dismiss this appeal as moot, or alternatively, should affirm the district court's denial of Plaintiffs' motion.

## Statement of Jurisdiction

The district court had jurisdiction over Plaintiffs Strong Communities' and Yvonne Cahill's action under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Venue was proper in the District of Arizona, because it was where all parties were located. *See* 28 U.S.C. § 1391(b).

Following full briefing on Plaintiffs' motion for a temporary restraining order and preliminary injunction, the district court denied the motion on October 11, 2024. [1-ER-02]. On October 14, 2024, Plaintiffs filed a notice of appeal pursuant to

Federal Rule of Appellate Procedure 4(a). [4-ER-509].

This Court has jurisdiction under 28 U.S.C. § 1292(A)(1).

## Statement of the Issues

1.     Did the district court properly deny Plaintiffs' motion for a temporary restraining order and preliminary injunction because Plaintiffs lack standing?

## Statement of the Case

### I.     Arizona's Voter Registration System.

Arizona has a bifurcated system of voter registration. To be a "Full Ballot" voter, eligible to vote in federal, state, and local elections, voters must provide documentary proof of citizenship ("DPOC"). A.R.S. § 16-166(F) (as limited by *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ("*ITCA*"). Those registrants who do not provide DPOC, but who nonetheless swear or affirm that they are United States citizens, are registered as "Federal Only" voters and are eligible to vote in federal elections only. This result is required by federal law, which requires states to "accept and use" a uniform federal form (the "Federal Form") produced by the Elections Assistance Commission for voter registration for federal elections. 52 U.S.C. § 20505(a)(1). States are prohibited from requiring federal voter registration applicants to submit additional information beyond that required by the Federal Form. *ITCA*, 570 U.S. at 15. Because the Federal Form does not require DPOC, 52 U.S.C. § 20508(b), Arizona is prohibited from requiring DPOC for Federal Only

voters.

Even under the bifurcated voter registration system, noncitizens are not allowed to register to vote in federal elections. The Federal Form requires that registrants attest that they are United States citizens and sign the form under penalty of perjury. 52 U.S.C. § 20508(b)(2). Thus, every voter registrant demonstrates their citizenship, either by providing DPOC or by attestation under penalty of perjury.

**II.      Federal List Maintenance Requirements.**

Federal law requires each state to perform voter list maintenance. 52 U.S.C. § 21083(a)(2) (delegating list maintenance to the appropriate State or local election official). In Arizona, the county recorders are charged with voter list maintenance duties. A.R.S. § 16-121.01(D) (delegating list maintenance duties to the county recorder). As relevant here, under 52 U.S.C. § 21083, the county recorders must ensure that the only voters whose names are removed from the voter registration list are those who are actually ineligible to vote. *See* 52 U.S.C. § 21083(a)(2)(B)(ii) (providing that "[t]he list maintenance performed under subparagraph (A) shall be conducted in a manner that ensures that-- . . . only voters who are not registered or who are not eligible to vote are removed from the computerized list"). This is, in essence, a voter-protection statute, placing a requirement upon the recorders to take appropriate steps to make certain that no one who is eligible to the franchise is removed by mistake from the voter registration list. Additionally, list maintenance

must be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965.  52 U.S.C. § 20507(b)(1).

## III.  Plaintiffs Initiated This Action.

On August 5, 2024, Strong Communities and Cahill filed a special action in the Maricopa County Superior Court against Maricopa County Recorder Stephen Richer and Maricopa County, alleging that that the Recorder is not properly performing voter list maintenance regarding noncitizens who they speculate are unlawfully registered to vote.  [Doc. 1].[2]  The Maricopa County Defendants removed the case to federal court one week later.  [4-ER-406-412].  On September 3, 2024, Plaintiffs filed their First Amended Complaint, adding the other 14 counties and their recorders.  [3-ER-370].

On September 15, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction.  [3-ER-367, 201].  In the motion, Plaintiffs asserted the temporary restraining order was necessary due to "the proximity of the general election in November."  [3-ER-233].  Plaintiffs argued they would "suffer even greater harm if the Defendants have not submitted 1373/1644 Requests to DHS and thus performed the necessary list maintenance before the election because of the

---

[2]      The cites to "Doc." refer to documents in the district court's CM/ECF docketing system, used for briefs, other memoranda of law, or orders that are not included in the ER but may be helpful as purely background information consistent with Ninth Circuit Rule 30-1.

disenfranchisement and vote dilution that will occur." [3-ER-234]. The Maricopa County Defendants filed a response in opposition in which they argued that Plaintiffs lacked standing because they failed to allege an injury and redressability, and they had not met the standard for a mandatory injunction. [2-ER-74]. The Maricopa County Defendants further argued that Plaintiffs' claims were barred by laches, the NVRA, and the *Purcell* Principle, among other arguments raised. [2-ER-81-85].

In their reply, Plaintiffs backtracked their requested relief. Plaintiffs argued "[t]he relief sought in this case is merely the sending of a letter to DHS and not the removal of any voters" and acknowledged that voters could not be removed "because there are fewer than 35 days before the election, and Arizona law imposes a 35-day cure period before any voters can be removed from voter rolls for lack of citizenship." [2-ER-25, 40]. Plaintiffs argued that a letter to DHS asking guidance on how to submit the requests would be sufficient. [2-ER-42]. As to their other relief, Plaintiffs maintained their request that Defendants send the Arizona Attorney General lists of Federal Only voters and their voter registration application. [*Id.*].

## IV. The District Court Denied Plaintiffs' Request for Injunctive Relief.

The district court denied Plaintiffs' request for injunctive relief based on their lack of standing and the *Purcell* Principle. [1-ER-2-3]. The court found that Cahill did not have standing. [1-ER-13]. First, the court reasoned that Cahill's assertion that she is subject to more scrutiny than other registered voters is demonstrably false

because SAVE checks[3] are only permitted when a person registers to vote and not for any other purposes. [1-ER-13-14]. Moreover, to the extent that Cahill challenged the general practice of SAVE checks, she failed to allege an injury. [1-ER-14-15]. Second, the court reasoned that Cahill failed to allege a vote dilution injury because "even if Cahill's vote was 'diluted' in the colloquial sense plaintiffs allege, that type of 'dilution' does not give Cahill a particularized injury in fact because it is also suffered by ever other voter." [1-ER-15].

Likewise, because Strong Communities raised the same standing arguments for its members, its representational standing failed for the same reasons as Cahill. [1-ER-16]. The court further found that Strong Communities lacked organizational standing because they failed to establish an injury in fact. [*Id.*]. The court reasoned that neither its core mission nor its pre-existing activities meaningfully differ from those found insufficient for standing in both *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*Hippocratic Medicine*") and *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165 (9th Cir. 2024) ("*AARA*"). [*Id.* at 16-17].

---

[3] As explained later in this brief, "SAVE" refers to the Systematic Alien Verification for Entitlements Program, which is operated by the U.S. Citizenship and Immigration Services. SAVE can be used to verify the immigration status of nonresident aliens, as well as the citizenship of naturalized citizens.

In addition to their failure to establish an injury in fact, the district court found that "plaintiffs' standing argument suffers from an independently-fatal flaw in the context of their request for emergency relief: they fail to show that their relief they now request—'merely the sending of a letter to DHS and not the removal of any votes . . . will redress their claimed imminent harm of disenfranchisement and vote dilution' in the November 5 general election." [1-ER-19]. The court further reasoned that even if Plaintiffs had standing, their request came too close before the election, and as such, Plaintiffs were required to show the merits were entirely clearcut in their favor and that their request was feasible in the middle of an election. [1-ER-21-22]. Plaintiffs failed to do so, and the district court denied their request for injunctive relief. [*Id.*].

## Summary of the Argument

The election has passed, and it is impossible for the Court to grant any effectual injunctive relief concerning the 2024 general election. Therefore, Plaintiffs' appeal is moot. Moreover, Plaintiffs lack standing. Cahill fails to establish an injury in fact based on SAVE verification. Likewise, Strong Communities raises the same standing arguments for its members as Cahill, and therefore it lacks representational standing for the same reasons.

Strong Communities fares no better under the doctrine of organizational standing because it suffers no concrete injury and cannot spend its way into standing

8

simply by expending money to gather information and advocate against the Defendants' action. Finally, Plaintiffs waive any challenge to the district court's determination that their injury is not redressable, which is fatal to their ability to establish standing.

The Court should dismiss this appeal as moot, or alternatively, should affirm the district court's denial of Plaintiffs' motion.

## Standard of Review

This Court reviews an order granting or denying a preliminary injunction for an abuse of discretion. *Smith v. Helzer*, 95 F.4th 1207, 1213 (9th Cir. 2024). "[A]n abuse of discretion occurs only when the district court fails to 'employ the appropriate legal standards[,]' misapprehends the law, or 'rests its decision . . . on a clearly erroneous finding of fact.'" *Id.* at 1213–14.

## Argument

## I. The Court Lacks Subject Matter Jurisdiction.

The Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. The doctrine of standing implements this limitation by requiring that a plaintiff show (1) an injury in fact, (2) fairly traceable to the challenged action of the defendant, (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Similarly, "'[w]hen it is impossible for a court to grant any effectual relief whatever

9

to the prevailing party[,]' there is nothing left for the court to do and the 'case becomes moot.'" *Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1221 (9th Cir. 2024).

In this case, Plaintiffs' appeal is moot because it is impossible for the court to grant any effectual injunctive relief with respect to the 2024 election. Plaintiffs also lack standing because they fail to establish a redressable injury that is concrete and particularized.

**A.    This Appeal is Moot.**

"The case or controversy requirement of Article III . . . deprives federal courts of jurisdiction to hear moot cases." *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1208 (9th Cir. 2021). "An interlocutory appeal of the denial of a preliminary injunction is moot when a court can no longer grant any effective relief sought in the injunction request." *Smith*, 95 F.4th at 1212. An "interlocutory appeal may be moot even though the underlying case still presents a live controversy." *Id.* When an appeal is moot, the court lacks jurisdiction and must dismiss it. *Id.*

In the motion for temporary restraining order and permanent injunction, Plaintiffs argued that injunctive relief was necessary because of "the proximity to the general election in November" and that if Defendants did not "perform the necessary list maintenance before the election" Plaintiffs would allegedly suffer from "disenfranchisement and vote dilution." [3-ER-233-234]. Plaintiffs

acknowledged that "once the election occurs, there can be no do-over and no redress." [3-ER-231]. Indeed, the election has passed, and it is impossible for the court to grant any effectual injunctive relief with respect to the 2024 election. *See e.g., Brown v. Yost*, No. 24-3354, 2024 WL 4847401, at *3 (6th Cir. Nov. 21, 2024) (finding plaintiff's request for injunctive relief concerning the November 2024 election moot). Plaintiffs' appeal is moot.

Despite addressing mootness in their Opening Brief, Plaintiffs did not deny that the harm they claimed with respect to the election is moot. [OB at 52]. Rather, Plaintiffs argue this appeal is not moot because they "continue[] to suffer harm, even post-election." [OB at 52]. If Plaintiffs had the necessary standing (and, they do not), this allegation, if true, might be sufficient to allow the underlying action to continue such that the district court could consider the merits of Plaintiffs' claims. But the prospect of future harm is insufficient to save a motion that asked the court to order preliminary injunctive relief prior to a date certain (here, November 5, 2024—Election Day), when that date has now passed. Plaintiffs ignore that they relied on the proximity to the election to justify their need for injunctive relief and that they alleged irreparable harm if the court did not order injunctive relief before the election. [*See* 3-ER-233-234]. Regardless, Plaintiffs fail to establish any ongoing injury for the reasons fully explained below. The Court should dismiss this appeal as moot.

**B.     Strong Communities and Cahill Lack Standing Because They Fail to Establish An Injury.**

The first standing element requires an "injury in fact" that must be "concrete and particularized," as well as "actual or imminent." *Lujan*, 504 U.S. at 560.  So, the injury cannot be "conjectural" or "hypothetical."  *Id.*  "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972).  Plaintiffs must have "a direct stake in the outcome of a litigation." *Diamond v. Charles*, 476 U.S. 54, 66 (1986).  Here, Plaintiffs wholly fail to meet this standard, and so lack Article III standing.

**1.     Cahill Fails to Establish An Injury.**

Cahill's theory of standing is premised on the theory that she is subject to greater scrutiny than other registered voters through SAVE verification because she is a naturalized citizen.  [OB at 46-47].  Arizona law requires that, within ten days of receiving a Federal Form voter registration application that is not accompanied by DPOC, the county recorder must attempt to verify the citizenship of the voter registration applicant.  A.R.S. § 16-121.01(D). This one-time, initial citizenship verification involves several different inquiries, none of which reoccur. *Id.*  One is made to the U.S. Citizenship and Immigration Services ("USCIS") for verification through the Systematic Alien Verification for Entitlements Program ("SAVE"). A.R.S. § 16-121.01(D)(3).  This is the SAVE check by USCIS about which Cahill

12

complains about.

But Cahill made no allegation that her registration was not accompanied by DPOC such that she would have been subject to SAVE verification. On the contrary, Cahill alleged that she plans to vote in future federal and state elections, [3-ER-374], suggesting that her registration was accompanied by DPOC. Thus, it is not clear that Cahill was ever subject to an initial SAVE verification. On appeal, Cahill argues "the court improperly assumed that [she] would never need to re-register to vote in Arizona for any reason, including an assumption that [she] would never need to move to another county or out of and back into Arizona." [OB at 47]. But Cahill did not allege that she needs to re-register or move in the imminent future, and any "assumption" that she does would be entirely hypothetical. This is precisely the type of speculative harm that is insufficient to confer standing. *See Hippocratic Med.*, 602 U.S. at 381 (stating "the injury must be actual or imminent, not speculative— meaning that the injury must have already occurred or be likely to occur soon.").

Further, Cahill is not subject to any *ongoing* SAVE verification because Arizona lacks the ability to use SAVE for voter list maintenance purposes—it can only use SAVE for the one-time check made when a voter submits her voter registration form. *See Mi Familia Vota v. Fontes*, 719 F.Supp.3d 929, 955 (D. Ariz. 2024). And even if Arizona gains access to SAVE for ongoing voter list maintenance purposes, the *Mi Familia Vota* court held that the NVRA's uniformity

requirement would not be violated. *Id.* at 1001 (holding that "[s]ection 8 of the NVRA [which contains the uniformity requirement] does not preempt the Voting Laws' SAVE checks"). Therefore, Cahill's attempt to apply *Mi Familia Vota* to this action is unavailing. Cahill has suffered no injury in fact.[4]

### C.     Strong Communities Lacks Representational Standing.

Strong Communities failed to establish representational standing. Indeed, the first element to establish representational standing requires a showing that "at least one of its members would have standing to sue in his own right." *Fleck & Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*, 471 F.3d 1100, 1105 (9th Cir. 2006). Because Strong Communities raised the same theories of standing for its members as Cahill, who failed to establish an injury in fact, Strong Communities' theory of representational standing fails for the same reasons as Cahill.

### D.     Strong Communities Lacks Organizational Standing.

"[O]rganizations may have standing "to sue on their own behalf for injuries they have sustained."" *Hippocratic Med.,* 602 U.S. at 393. However, "organizations must satisfy the usual standards for injury in fact, causation, and redressability that

---

[4]     Cahill does not challenge the district court's determination that she failed to establish a vote dilution injury. [OB at 46–48]. Such an argument is therefore abandoned and waived. *See Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016) (failure to raise an argument in an opening brief waives the argument on appeal); *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (appellate court reviews "only issues which are argued specifically and distinctly in a party's opening brief.").

14

apply to individuals." *Id.* at 393–94. "[P]laintiffs must allege more than that their mission or goal has been frustrated—they must plead facts showing that their core activities are directly affected by the defendant's conduct." *AARA*, 117 F.4th at 1172. The injuries must be "apart from the plaintiff's response to that government action." *Id.* at 1170 (citing *Hippocratic Medicine*, 602 U.S. at 395–36).

Strong Communities argues its pre-existing activities—public outreach and public education—were affected by Defendants' actions. [OB at 40–41]. Strong Communities emphasizes that these activities "pre-exist[] the conduct being challenged here and exist[] apart from that conduct." [OB at 41]. Thus, it suggests that as long as its public outreach and public education activities existed before the challenged conduct, then it can spend its way into standing by diverting its resources and responding to Defendants' actions. This is simply the diversion of resources theory by another name. And *Hippocratic Medicine* does not support such a proposition.

In *Hippocratic Medicine*, the plaintiff medical associations sued the Federal Drug and Food Administration ("FDA") when it relaxed certain restrictions on mifepristone, a drug used for medical abortions. *Hippocratic Med.*, 602 U.S. at 395. The medical associations argued they suffered an injury to their ability to provide services and achieve their organizational mission because the defendants' actions had "caused" them to "conduct their own studies" so they could "better inform their

members and the public" about mifepristone. *Id.* at 395. They contended that they were "forced" to expend resources "engaging in public advocacy and public education" to the detriment of other spending priorities. *Id.* The Court found that these activities were insufficient for standing. *Id.* It reasoned that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* at 394.

The Court further explained that *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), does not support such an expansive theory of standing. *Id.* at 395. The Court emphasized that the plaintiffs in *Havens* were not just an "issue-advocacy organization," but they also provided housing counseling services, and the defendant's actions "directly affected and interfered with" their ability to provide these counseling and referral services. *Id.* In contrast, the Court reasoned the FDA's actions did not impose "any similar impediment" to the medical associations' "advocacy business." *Id.* In other words, the medical associations were not affected by the FDA's actions.

This case is no different. Strong Communities alleges the same type of harm to its public outreach and public education that was held insufficient for standing in *Hippocratic Medicine*. Likewise, the Defendants' actions in this case impose no impediment to Strong Communities' advocacy business activities. As the district

16

court noted, "Defendants' actions do not prevent EZAZ.org volunteers from encouraging voters or educating legislators or making efforts to recruit new volunteers; those functions would continue unaffected but for EZAZ.org's own decision to devote more time during these pre-existing activities to voter list maintenance topics." [1-ER-18]. And it makes no difference that Strong Communities engaged in public outreach and public education *before* the challenged action when the Defendants' actions have not directly affected and interfered with its ability to engage in these activities. *See Hippocratic Med.*, 602 U.S. at 395.

For these reasons, the Court need not wait to decide this appeal until after a decision is made in the petition for rehearing en banc in *AARA*. Strong Communities cannot establish standing under *Hippocratic Medicine*, and therefore, would not be able to establish standing under *AARA* for the same reasons. Strong Communities argues that "virtually no organization could ever have standing" under the district court's interpretation of *Hippocratic Medicine* and *AARA*. [OB at 40]. But "[t]he 'assumption' that if these plaintiffs lack 'standing to sue, no one would have standing, is not a reason to find standing.'" *Hippocratic Med.*, 602 U.S. at 396. This Court should affirm.

### E. Strong Communities and Cahill Lack Redressability.

"In addition to establishing that their injury results from the defendants' challenged action, plaintiffs must also demonstrate that the requested relief will

remedy their injury." *Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 763 (9th Cir. 2004). It must be "'likely, as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561. "[I]f the requested remedy would not cure the plaintiff's injury, then the injury is not redressable." *AARA*, 117 F.4th at 1174.

On appeal, Plaintiffs do not challenge the district court's finding that "plaintiffs' standing argument suffers from an independently-fatal flaw" because Plaintiffs lack redressability. Plaintiffs therefore waive any argument that the district court erred in denying their motion based on redressability, which is fatal to their appeal. *See Rawson-Neal Psychiatric Hosp.*, 840 F.3d at 1148 (failure to raise an argument in an opening brief waives the argument on appeal); *see also Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) (arguments raised for the first time in a reply brief are deemed waived). Although Plaintiffs waive any challenge to the district court's determination on redressability, Defendants address it as an independent reason for this Court to affirm. *Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024) (stating an appellate court "may affirm on any ground supported in the record.").

In their motion for a temporary restraining order and permanent injunction, Plaintiffs alleged imminent harm in the form of "disenfranchisement and vote dilution" if Defendants did not send the list of Federal Only voters to DHS "and thus

performed the necessary list maintenance" before the 2024 general election. [3-ER-234]. In response, Defendants argued that Plaintiffs' request that all Federal Only voters be subjected to citizenship verification for the purpose of removing ineligible voters would be a prohibited systematic purge within the 90-day prohibited period, *see* 52 U.S.C. § 20507(c)(2)(A). [2-ER-82]. Plaintiffs then backtracked in their reply and limited their requested relief. Plaintiffs argued "[t]he relief sought in this case is merely the sending of a letter to DHS and not the removal of any voters" and acknowledged that voters could not be removed "because there are fewer than 35 days before the election, and Arizona law imposes a 35-day cure period before any voters can be removed from voter rolls for lack of citizenship." [2-ER-40]. Plaintiffs further argued that a letter to DHS simply asking for guidance on how to submit the requests would be sufficient. [2-ER-43].

However, simply beginning the investigation process would not redress Plaintiffs' alleged harm. *See Lujan*, 504 U.S. at 562 (stating plaintiffs have a burden of establishing redressability when an element of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict[.]"). Indeed, it is purely speculative whether DHS can or will respond to citizenship verification requests or whether the Arizona Attorney General will investigate any list of names sent to her. And Plaintiffs do not allege that they

19

will. On the contrary, Plaintiffs' suggestion that it would be sufficient for Defendants to send a letter requesting guidance from DHS demonstrates that Plaintiffs do not know how their requested relief, if granted, would even work. [*See* 2-ER-42]. As the district court correctly noted, "[r]edressing their claimed harm of 'disenfranchisement and vote dilution' before the general election . . . requires more than *starting* an investigation: it requires *removing* ineligible voters from the rolls at the end of the investigation." [1-ER-20]. Such redress can no longer occur before the 2024 general election. Accordingly, Plaintiffs failed to establish that their alleged injury is redressable, and critically, they waived this issue on appeal.

## Conclusion

For these reasons, this Court should dismiss this appeal as moot. Alternatively, the court should affirm the district court's denial of Plaintiffs' motion.

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By: /s/ *Rosa Aguilar*

Thomas P. Liddy
Joseph E. La Rue
Jack O'Connor III
Rosa Aguilar
Deputy County Attorneys
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003

ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Maricopa County Appellees*

December 11, 2024

## Statement of Related Cases

Pursuant to Ninth Circuit Rule 28-2.6, I certify that:

[ ]    I am unaware of any related cases currently pending in this court.

[ ]    I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[x]    I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

The district court relied in part on *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165 (9th Cir. 2024) to deny Plaintiffs' motion, which concerns the issue of organizational standing. A petition for rehearing en banc is currently pending before this Court.

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:    */s/ Rosa Aguilar*

Thomas P. Liddy
Joseph E. La Rue
Jack O'Connor III
Rosa Aguilar
Deputy County Attorney
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
ca-civilmailbox@mcao.maricopa.gov

December 11, 2024

## Certificate of Compliance

This brief contains 4,616 words excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief:

[x]   complies with the word limit of Cir. R. 32-1.

[ ]    is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ]    is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]    is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ]    complies with the longer length limit permitted by Cir. R. 32-2(b) because

    [ ]   it is a joint brief submitted by separately represented parties;

    [ ]   a party or parties are filing a single brief in response to multiple briefs; or

    [ ]   a party or parties are filing a single brief in response to a longer joint brief.

[ ]    complies with the length limit designated by court order dated _____.

[ ]    is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:   */s/ Rosa Aguilar*

    Thomas P. Liddy
    Joseph E. La Rue
    Jack O'Connor III
    Rosa Aguilar
    Deputy County Attorney
    MARICOPA COUNTY ATTORNEY'S OFFICE
    CIVIL SERVICES DIVISION
    225 West Madison Street
    Phoenix, Arizona 85003

ca-civilmailbox@mcao.maricopa.gov

December 11, 2024

## Certificate of Service

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address):

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:    /s/ *Rosa Aguilar*

Thomas P. Liddy
Joseph E. La Rue
Jack O'Connor III
Rosa Aguilar
Deputy County Attorney
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
ca-civilmailbox@mcao.maricopa.gov

December 11, 2024